**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-22434-CIV-MARTINEZ/AOR**

AUDLEY BROWN,

      Plaintiff,

v.

GENERAC POWER SYSTEMS, INC. *et al*.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant Generac Power System, Inc.'s ("Defendant" or "Generac") Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 (hereafter, "Motion for Sanctions") [D.E. 26].  This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 28].  The undersigned held an evidentiary hearing via Zoom video conference on this matter on November 4, 2020 (hereafter, "Evidentiary Hearing") [D.E. 40].  For the reasons stated below, the undersigned respectfully recommends that the Motion for Sanctions be GRANTED IN PART.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Audley Brown ("Plaintiff" or "Brown") commenced this action against Defendants Generac, Florida Power & Light Company, and Briggs & Stratton Corporation (collectively, "Defendants") on June 12, 2020 [D.E. 1].  In his Complaint for Patent Infringement (hereafter, "Complaint") [D.E. 1], Brown alleged, in relevant part, that:

> ➢ Brown is the owner of all right, title, and interest in, and the named inventor of, United States Patent No. 5,998,961 (hereafter, "the '961 Patent"), entitled "PORTABLE BATTERY CHARGER."

> ➤ The '961 Patent discloses a new portable battery charger for jump-starting an engine of a disabled vehicle.

> ➤ The '961 Patent claims a main housing having a motor and a generator disposed therein. The main housing includes gasoline and oil intake portions in communication with the motor. A pair of cables extends outwardly from one of the side walls of the main housing. The pair of cables is in communication with the generator. The pair of cables each has a spring-loaded clip disposed on free ends thereof for operative coupling with positive and negative terminals of a battery.

> ➤ On information and belief, and without Plaintiff's authorization, Defendants have made, used, offered to sell, sold, and/or imported into the United States products having the assembly and components claimed in the '961 Patent.

> ➤ On information and belief, Defendant Generac's infringing portable battery chargers include a portable battery charger identified, at least, as "Generac Gas Power Charger."

> ➤ On information and belief, Defendant Generac's "Generac Gas Power Charger" contained elements defined with respect to the claims of the '961 Patent.

> ➤ Defendant Generac has made, used, offered to sell, sold, and/or imported into the United States the "Generac Gas Power Charger" knowing of the existence of the '961 Patent without Plaintiff's authorization.

> ➤ Defendants, directly, contributorily and by inducement, infringed at least one claim of the '961 Patent, literally and/or under the doctrine of equivalents.

See Compl. [D.E. 1]. Brown attached a copy of the '961 Patent to his Complaint as Exhibit A.

See Ex. A. to Compl. [D.E. 1-1]. Based on these and other allegations in his Complaint, Brown

asserted a single claim for patent infringement pursuant to 35 U.S.C. § 271 (hereafter, "Section

271") against Defendants. See Compl. [D.E. 1 ¶¶ 30–37].[1] In his prayer for relief, Brown

---

[1] Section 271 provides, in pertinent part:

(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted

2

requested a judgment of willful infringement; an award of various categories of damages, including "Defendants' profits on its products found to infringe the '961 Patent [pursuant to 35 U.S.C. § 289]"; and "[r]estitutionary relief . . . including disgorgement of wrongfully obtained profits . . . ." <u>See</u> Compl. [D.E. 1 at 7–8].

On July 22, 2020, Generac served Brown with a copy of the Motion for Sanctions in accordance with the safe harbor provision of Rule 11 of the Federal Rules of Civil Procedure (hereafter, "Rule 11"). <u>See</u> Mot. for Sanctions [D.E. 26 at 1 n.1]; <u>see also</u> Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions [pursuant to Rule 11] . . . must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.").

On August 13, 2020, one day after the Rule 11 safe harbor period had expired, Generac filed the Motion for Sanctions, requesting that sanctions pursuant to Rule 11 be imposed against Brown and his counsel, Manotti Jenkins ("Mr. Jenkins") and Albert Bordas ("Mr. Bordas"), because "Plaintiff's lawsuit was objectively unreasonable from the outset, which would have been apparent if Plaintiff and his counsel would have performed a reasonable pre-suit investigation." <u>See</u> Mot. for Sanctions [D.E. 26 at 1].

On that same day, Brown filed his Notice of Voluntary Dismissal Under Fed. R. Civ. P. 41(a)(1)(A) Against all Defendants [D.E. 27], which resulted in the Court's issuance of an Order: dismissing this action in its entirety without prejudice; expressly retaining jurisdiction over the

---

for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

28. U.S.C. § 271(a)–(c).

Motion for Sanctions; and referring the Motion for Sanctions to the undersigned for proper disposition [D.E. 28].

Pursuant to the Court's referral, the undersigned held the Evidentiary Hearing, during which Brown conceded that no Markman Hearing was needed to resolve the Motion for Sanctions. See Transcript of Evidentiary Hearing (hereafter, "Transcript") [D.E. 44 at 36:10–37:6]. Thereafter, in early January 2021, the parties filed their post-hearing briefs. See Brown's Post-Evidentiary Hearing Memorandum on the Motion for Sanctions (hereafter, "Brown's Brief") [D.E. 45]; Generac's Post-Hearing Closing Brief in Support of the Motion For Sanctions (hereafter, "Generac's Brief") [D.E. 46].

## RULE 11 SANCTIONS

Rule 11 provides, in pertinent part:

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

**(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

*** * ***

**(c) Sanctions.**

**(1) *In General.*** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a

law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

**(2)** ***Motion for Sanctions.*** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

***

**(4)** ***Nature of a Sanction.*** A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

**(5)** ***Limitations on Monetary Sanctions.*** The court must not impose a monetary sanction:

**(A)** against a represented party for violating Rule 11(b)(2) . . . .

Fed. R. Civ. P. 11.  Rule 11 generally requires that litigants "'stop-and-think' before initially making legal or factual contentions."  See Fed. R. Civ. P. 11 advisory committee's note (1993).

When confronted with a request for sanctions pursuant to Rule 11, the court:

first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would've been aware had he made a reasonable inquiry.  If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound.

Ctr. for Individual Rights v. Chevaldina, No. 16-CV-20905, 2017 WL 2959077, at *2 (S.D. Fla. 2017).

## FACTUAL FINDINGS

The following witnesses testified at the Evidentiary Hearing: Mr. Bordas, Brown, and

Kevin Paul Cole (hereafter, "Mr. Cole"), a Generac senior associate engineer.  See Tr. [D.E. 44].

The following exhibits were admitted at the Evidentiary Hearing: Generac's Exhibits Nos. 2, 3, 5-

8, 11-14, and 16; and Brown's Exhibits Nos. 1-5, and 7.   See Ex. and Witness List [D.E. 41];

Certificates of Compliance re Admitted Evidence [D.E. 42 & 43].

### A. *Mr. Bordas' Testimony*:

1.      Brown retained Mr. Bordas in September 2019 to evaluate the '961 Patent because

he was concerned that it was being infringed by Generac.

2.      The '961 Patent provides, in pertinent part:

> In use, the present invention would eliminate the need to remove a dead or weak
> battery to have it recharged or tracking down someone for a jump-start. There
> would be no need to call a service station for assistance since the recharging could
> be completed right on the spot by the vehicle owner. By simply connecting the
> cables and starting the motor, electricity would be produced by the alternator for
> direct transfer to the dead battery for recharging.

See '961 Patent, Generac's Ex. 2 [D.E. 41-2 at 6].

3.      Mr. Bordas advised Brown that he would need to conduct a Patent Infringement

Analysis and a Claim Chart Analysis prior to the commencement of an infringement action against

Defendants.

4.      Mr. Bordas' Patent Infringement Analysis was based on the following documents:

File Wrapper of US Patent 5,998,961 ('961 Patent) in Appendix 1;

The '961 Patent in Appendix 2;

The Generac gas power chargers seen in the link https://www.zoro.com/b/GENERAC/ and
pictured in Appendix 3A, 3B, and 3C; and

The battery charge cable in the link https://www.walmart.com/ip/Generac-065787-Portable-
Generator-Battery-Charger-
Cable/762457149?wmlspartner=wlpa&selectedSellerId=12757&adid=22222222228145133481
&wl0=&wl1=g&wl2=m&wl3=380330399404&wl4=aud-566049426705:pla-
446534365364&wl5=9011925&wl6=&wl7=&wl8=&wl9=pla&wl10=120813424&wl11=online
&wl12=762457149&veh=sem pictured in Appendix 4.

See Patent Infringement Analysis, Brown's Ex. 2 [D.E. 43-2 at 1].

     5.     Mr. Bordas used the term "gas power chargers" as a generic term to collectively refer to the different Generac gas operated power charging systems that he viewed online.

     6.     In his Patent Infringement Analysis, Mr. Bordas concluded that "the above-referenced Generac gas power chargers may literally infringe independent claim 2 of [the '961 Patent]." Id.

     7.     Claim 2 of the '961 Patent reads as follows:

> 2. A new portable battery charger for jump-starting an engine of a disabled vehicle comprising, in combination:
>
> a main housing having a motor and a generator disposed therein, the main housing including gasoline and oil intake portions in communication with the motor;
>
> a pair of cables extending outwardly from one of the side walls of the main housing, the pair of cables being in communication with the generator, the pair of cables each having a spring-loaded clip disposed on free ends thereof for operative coupling with positive and negative terminals of a battery.

See Generac's Ex. 2 [D.E. 41-2 at 7].

     8.     In the Literal Infringement Analysis section of his Patent Infringement Analysis, Mr. Bordas concluded that:

> The Generac gas power chargers appears to be a portable battery charger for jumpstarting an engine of a disabled vehicle comprising, in combination:
>
> A) a main housing having a motor and a generator disposed therein, the main housing including gasoline and oil intake portions in communication with the motor; and
>
> B) a pair of cables extending outwardly from one of the side walls of the main housing, the pair of cables being in communication with the generator, the pair of cables each having a spring-loaded clip disposed on free ends thereof for operative coupling with positive and negative terminals of a battery. It is noted that Generac sells pair of cables, as seen in Appendix 4, that may be plugged into one of the walls of the main housing.

7

See Brown's Ex. 2 [D.E. 43-2 at 3].

9.      Mr. Bordas acknowledged that, nowhere in his Patent Infringement Analysis, did he specify exactly which Generac products embodied the literal language of claim 2 of the '961 Patent.

10.     Mr. Bordas completed and emailed his Patent Infringement Analysis to Brown on September 16, 2019.  See Email from Mr. Bordas to Brown, Brown's Ex. 3 [D.E. 43-3].

11.     Brown then retained Mr. Bordas to perform a Claim Chart Analysis comparing the claims of the '961 Patent to the claims of the Generac products identified in Appendices 3A, 3B, 3C, and 4 of Mr. Bordas' Patent Infringement Analysis--which were incorporated into the Claim Chart Analysis as Appendices 5A, 5B, 5C, and 6, respectively.  See Brown's Ex. 2 [D.E. 43-2 at 1, 5-8]; Claim Chart Analysis, Brown's Ex. 5 [D.E. 43-5 at 1, 5–8].

12.     There are 23 Generac products (hereafter, "Alleged Infringing Products") pictured in Appendices 5A, 5B, and 5C of Mr. Bordas' Claim Chart Analysis.  See Brown's Ex. 5 [D.E. 43-5 at 5–7].

13.     One of the Generac products pictured in Appendix 5A of the Claim Chart Analysis is a 5,000-watt diesel portable generator.  Id. at 5.

14.     Mr. Bordas admitted that he did not attempt to view the Alleged Infringing Products in a physical store, physically inspect those products, or operate those products, nor did he look at the publicly available "spec" sheets for all 23 of the products he had listed in his Claim Chart Analysis.

15.     Mr. Bordas testified that he did review the Generac Owner's Manual for GP Series Portable Generator, which provides: "This receptacle permits recharging a 12-Volt automotive or utility style storage battery with the battery charge cables provided. This receptacle can not

recharge 6-Volt batteries and can not be used to crank an engine having a discharged battery." <u>See</u> Generac Owner's Manual for GP Series Portable Generator, Brown's Ex. 4 [D.E. 43-4 at 10].

16.     Mr. Bordas concluded in his Claim Chart Analysis that the Alleged Infringing Products embodied the language of claim 2 of the '961 Patent, and thus likely infringed.  However, he did not specify which of the Alleged Infringing Products actually infringed on the '961 Patent. <u>See</u> Brown's Ex. 5 [D.E. 43-5].

17.     Appendix 6 of the Claim Chart Analysis references Generac's 065787 Portable Battery Charger Cable (hereafter, "Generac Charger Cable"), pictured below:



<u>Id.</u> at 8.

18.     Mr. Bordas concluded in his Claim Chart Analysis that a certain feature of the Generac Charger Cable overlapped the following limitation in claim 2 of the '961 Patent: "cables extending outwardly from the side walls of the main housing, pair of cables being in communication with the generator, the pair of cables each having a spring-loaded clip disposed on

free ends thereof for operative coupling with positive and negative terminals of a battery." See Brown's Ex. 5 [D.E. 43-5 at 2–3].

19.    Mr. Bordas did not attempt to physically connect the Generac Charger Cable to the Alleged Infringing Products.  He acknowledged that, if he had done so, he would have discovered that the Generac Charged Cable possesses a V-shaped plug which is incompatible with 20 of the Alleged Infringing Products.

20.    Mr. Bordas did not review each of the Alleged Infringing Products' product listings available online to determine whether they were compatible with a V-shaped plug.

21.    Mr. Bordas emailed his Claim Chart Analysis to Brown on November 22, 2019.

22.    In January 2020, Brown advised Mr. Bordas that he was interested in filing a lawsuit against Generac for infringing on the '961 Patent.

23.    Mr. Bordas drafted and signed the Complaint, which was filed in June 2020.

24.    Mr. Bordas did not identify a specific infringing Generac product in the Complaint. He was not aware of any product bearing the name "Generac Gas Power Charger"—which is how he described the purported infringing Generac product in the Complaint.  See Compl. [D.E. 1]

25.    Mr. Bordas acknowledged that the Complaint's requested recovery of profits pursuant to 35 U.S.C. § 289 is inapplicable in this case because such recovery is limited to design patents and the '961 Patent is a utility patent. That language was mistakenly carried over in the Complaint from a prior complaint that Mr. Bordas had drafted.

**B. Brown's Testimony**:

26.    According to Brown's very limited testimony, the '961 Patent's claims require jump starting.

### C. *Mr. Cole's Testimony*:

27.     Mr. Cole is a senior associate engineer at Generac; he has been with the company for 22 years and is familiar with its portable generator products and owners' manuals.

28.     A Generac generator is an engine that powers an electrical power source to be used when utility power is not available.  It is a portable power source.

29.     Generac does not make or sell any product named "Generac Gas Power Charger."

30.     Mr. Cole is familiar with the Alleged Infringing Products, the Generac Charger Cable, and their features and operations.

31.     The purpose of the Generac Charger Cable is for charging batteries.

32.     Battery trickle charging is different than jump starting.  Charging is performed at a slow rate using less current to prevent the battery from overheating or malfunctioning.

33.     Only 3 of the 23 Alleged Infringing Products are compatible with the Generac Charger Cable's V-shaped plug.  This information can be confirmed by either visiting Generac's website, where the specifications and manuals for those products are available, or purchasing those products at a local store to inspect them.

34.     Neither the Alleged Infringing Products nor the Generac Charger Cable are capable of jump starting a disabled vehicle. They are limited at most to ten amps, while an excess of 100 amps are required to jump start a disabled vehicle.  The electrical current demand for jump starting would exceed the design of the cables and the generators.

35.     Generac's products contain a 10-amp fuse that is intended to guard against their foreseen misuse of jump starting.  If someone attempts to jump start a vehicle using these products, the 10-amp fuse will blow as a safety mechanism.

36.     Jumper cables are much thicker than the Generac Charger Cable because jumper

cables are made with the much larger wire gauge required to handle the increased amp range or current required to turn on the starter. The Generac Charger Cable is made with a much smaller wire gauge, which is the only necessary gauge to conduct the current to charge a battery. A jumper cable is pictured below for comparison with the Generac Charger Cable:



Photograph, Generac's Ex. 11 [D.E. 41-8 at 4].

37.     A diesel generator cannot use gasoline.

38.     Generac's publicly available product manuals inform customers that the Generac Charger Cable and the compatible Alleged Infringing Products cannot jump start a car with a discharged battery.

## DISCUSSION

Generac seeks Rule 11 sanctions pursuant to all three prongs of the Rule. Specifically, Generac argues that Brown's allegations of infringement "lacked evidentiary support, were likely presented for the improper purpose of extracting a nuisance-value settlement from Generac, and requested remedies admittedly unavailable under the law. No reasonable attorney who had conducted an adequate pre-suit investigation could conclude otherwise." See Generac's Br. [D.E. 46 at 9].

12

As noted above, Rule 11(b) requires that "by presenting to the court a pleading an attorney certifies that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)–(3).

The undersigned will address Generac's Rule 11(b)(3), Rule 11(b)(2), and Rule 11(b)(1) arguments in that order.

### A. Lack of objective evidentiary support – Rule 11(b)(3)

Generac argues that it is entitled to an award of sanctions pursuant to Rule 11(b)(3) because there was no evidentiary support for Brown's factual contentions that Generac infringed on the '961 Patent either under a theory of literal infringement or under the doctrine of equivalents. See Generac's Br. [D.E. 46 at 10–18].

It is well established that Rule 11(b)(3) applies to infringement allegations. See Antonious v. Spalding & Evenflo Companies, Inc., 275 F.3d 1066, 1074 (Fed. Cir. 2002) ("An attorney's allegation of infringement is therefore subject to the requirement of Rule 11(b)(3) that all allegations and factual contentions have evidentiary support."). Thus, "before filing a claim, an attorney must conduct a reasonable investigation of the factual bases underlying the claim. When there is no factual basis for a particular claim, the attorney has violated Rule 11(b)(3)." Chaplin v. Du Pont Advance Fiber Sys., 124 F. App'x 771, 774 (4th Cir. 2005).

"The objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998) (footnote omitted). "The reasonableness of the prefiling inquiry depends on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the underlying facts; and whether the paper was based on a plausible view of the law." Garcia v. Estrella Ins., Inc., No. 11-CV-24028, 2013 WL 12383463, at *2 (S.D. Fla. 2013) (citing Jones v. Int'l Riding Helmets, Ltd., 49 F.3d 692, 695 (11th Cir. 1995)).

Accordingly, in order to determine whether sanctions are appropriate pursuant to Rule 11(b)(3), the undersigned must determine whether: (1) Plaintiff's Complaint was objectively frivolous; and (2) if so, whether Mr. Bordas and Mr. Jenkins would have been aware that it was frivolous had they made a reasonable inquiry. Chevaldina, 2017 WL 2959077, at *2.

**a. <u>Whether the Complaint was objectively frivolous</u>**

In response to Generac's frivolousness argument, Brown contends that "[his] only relevant filing, [the] Complaint, did not accuse twenty-three (23) Generac products of patent infringement. Nor did [he] attach any document to the Complaint referencing or accusing those twenty-three (23) Generac products of patent infringement." See Brown's Br. [D.E. 45 at 13] (emphasis and citations omitted).

Brown's argument is without merit as it is clear from Mr. Bordas' testimony that the Alleged Infringing Products and the Generac Charger Cable analyzed in his Patent Infringement Analysis and Claim Chart Analysis formed the basis for his patent infringement claim against Generac. See Compl. [D.E. 1]. Additionally, Mr. Bordas' use of the term "Generac Gas Power Charger" in the Complaint was a generic reference to the Generac products serving as the focus of

his Patent Infringement Analysis and Claim Chart Analysis.  See Tr. [D.E. 44 at 69:8–12] ("I identified it as gas power chargers. I came up with that term because they take gasoline, and they power – they're a power charging system. So, that's how I identified in grouping, just a generic grouping of Generac products because they have so many of them and that's how I came up with that.").  Therefore, the undersigned next considers the two infringement theories potentially applicable to the Complaint.

### i.   _Literal Infringement_

"To prove literal infringement, the patentee must show that the accused device contains _each and every limitation_ of the asserted claims." SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd., 983 F.3d 1367, 1380 (Fed. Cir. 2021) (emphasis in original) (quoting Ericsson, Inc. v. D-Link Systems, Inc., 773 F.3d 1201, 1215 (Fed. Cir. 2014)); see also WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1350 (Fed. Cir. 1999) ("If even one limitation is missing or not met as claimed, there is no literal infringement.") (quoting Mas-Hamilton Grp. v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed. Cir. 1998)).  "The patentee has the burden of proving infringement by a preponderance of the evidence." Duncan Parking Techs., Inc. v. IPS Grp., Inc., 914 F.3d 1347, 1360 (Fed. Cir. 2019) (citing SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 889 (Fed. Cir. 1988)).

As noted above, claim 2 of the '961 Patent provides:

> 2. A new portable battery charger for jump-starting an engine of a disabled vehicle comprising, in combination:
>
> a main housing having a motor and a generator disposed therein, the main housing including gasoline and oil intake portions in communication with the motor;
>
> a pair of cables extending outwardly from one of the side walls of the main housing, the pair of cables being in communication with the generator, the pair of cables each having a spring-loaded clip disposed on free ends thereof for operative coupling with positive and negative terminals of a battery.

See Generac's Ex. 2 [D.E. 41-2 at 7].

Generac argues that the Alleged Infringing Products and the Generac Charger Cable do not literally infringe on the '961 Patent because: "it is physically impossible to connect the [Generac Charger Cable] to twenty of the [Alleged Infringing Products]"; "one of the [Alleged Infringing Products] is a diesel generator"; "none of the [Alleged Infringing Products] can jump[ ]start the engine of a disabled vehicle"; and "the Generac [Charger Cable] do[es] not have wire thick enough to handle the current necessary for jump[ ]starting an engine." See Generac's Br. [D.E. 46 at 9–18].

"The words of a claim are generally given their ordinary and customary meaning.  In some cases, the ordinary meaning of claim language may be readily apparent and claim construction will involve little more than the application of the widely accepted meaning of commonly understood words." Homeland Housewares, LLC v. Whirlpool Corp., 865 F.3d 1372, 1375 (Fed. Cir. 2017) (citation omitted).

The undersigned finds that the ordinary meaning of the language "jump-start an engine" is readily apparent. Id.; see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1361 (Fed. Cir. 2013) ("In construing a claim term, we look to the words of the claim itself. If the claim term has a plain and ordinary meaning, our inquiry ends.") (citing Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed.Cir.1996)).  The undersigned further finds that the application of the widely accepted meaning of the commonly understood words "jump-start an engine" differs from that of "charging batteries."

Accordingly, there was no evidentiary support for a claim that the Alleged Infringing Products and the Generac Charger Cable literally infringed on the '961 Patent, as the accused devices do not contain each and every limitation of claim 2 of the '961 Patent.

16

ii.     *Doctrine of Equivalents*

"A party asserting infringement under the doctrine of equivalents may prove its case by showing, on an element-by-element basis, that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." Verinata Health, Inc. v. Ariosa Diagnostics, Inc, 809 F. App'x 965, 972 (Fed. Cir. 2020) (citing Crown Packaging Tech., Inc. v. Rexam Beverage Can Co., 559 F.3d 1308, 1312 (Fed. Cir. 2009)).

Brown argues that Mr. Bordas' analyses "led him to conclude that a necessary pre-requisite of the 'jump start' element in [c]laim 2 is that the generator 'charges' or 'recharges' a dead or weak battery, which functionality Generac's testifying senior associate engineer admitted that Defendant's generators perform." See Brown's Br. [D.E. 45 at 2]. Thus, Brown attempts to equate the "jump-starting an engine" limitation in claim 2 of the '961 Patent to the Alleged Infringing Products and Generac Charger Cable's function of charging batteries. Brown further argues that he "probably could show infringement of [c]laim 2 under the Doctrine of Equivalents if his literal infringement allegations were not successful." Id.

However, Plaintiff's patent infringement claim likewise fails under the doctrine of equivalents because, as explained by Mr. Cole, the Alleged Infringing Products and the Generac Charger Cable cannot "jump-start an engine" and therefore cannot perform substantially the same function as the '961 Patent. Verinata Health, Inc., 809 F. App'x at 972. Accordingly, there was no evidentiary support for a claim that the Alleged Infringing Products and the Generac Charger Cable infringed on the '961 Patent under the doctrine of equivalents.

In light of the foregoing, the undersigned finds that Plaintiff's Complaint was objectively frivolous at the time it was filed.

### b.  __Whether Plaintiff's counsel made a reasonable inquiry__

Generac argues that Mr. Jenkins and Mr. Bordas:

> violated Rule 11 by failing to conduct a reasonable investigation before filing a baseless patent infringement Complaint, and thereafter advocating demonstrably false infringement positions against twenty-three specific Generac products.   Any reasonable pre-suit investigation would have revealed that Plaintiff's infringement allegations were unsupportable. Generac's counsel even provided Plaintiff's counsel with publicly available facts showing their claims were baseless.

See Generac's Br. [D.E. 46 at 2].

"Rule 11 requires an attorney who files a patent infringement action to compare the accused device with the construed patent claims." Antonious, 275 F.3d at 1073 (citing View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986 (Fed. Cir. 2000)).  "The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11." View Eng'g, Inc., 208 F.3d at 986. "[C]ounsel must make a reasonable effort to determine whether the accused device satisfies each of the claim limitations." Antonious, 275 F.3d at 1074 (citing Judin v. United States, 110 F.3d 780, 784 (Fed. Cir. 1997)).

Brown describes the pre-filing inquiry as follows:

> [Mr. Bordas] conducted a thorough pre-filing investigation that included *an analysis* of the intrinsic record of the '961 Patent, including the language of asserted Claim 2, the specification, and the File Wrapper, *as well as some of Defendant's generators.*

See Brown's Br. [D.E. 45 at 2] (emphasis added).  Thus, Brown concedes that a pre-suit analysis of __only__ some of Generac's generators was performed.  Id.

Specifically, Mr. Bordas testified that, in the context of his pre-filing investigation, he:

➢  did not open each of the Alleged Infringing Products' product listings available online to determine whether they were compatible with the Generac Charger Cable;

➢  reviewed Brown's Exhibit 4, a Generac Owner's Manual for GP Series Portable Generator, which provides: "This receptacle permits recharging a 12-Volt automotive or

utility style storage battery with the battery charge cables provided. This receptacle can not recharge 6-Volt batteries and can not be used to crank an engine having a discharged battery"; and

➢ included a 5,000-watt diesel portable generator in Appendix 5A of the Claim Chart Analysis.

Moreover, Mr. Cole testified that the specifications and manuals for the Generac products serving as the basis for the Patent Infringement Analysis and the Claim Chart Analysis were publicly available on Generac's website. An inspection of those documents would have revealed that only 3 of the 23 Alleged Infringing Products are compatible with the Generac Charger Cable's V-shaped plug; and the Generac Charger Cable and the compatible Alleged Infringing Products cannot be used to jump start a car with a discharged battery.

It is clear, therefore, that Mr. Bordas' pre-suit analysis revealed that some of the Alleged Infringing Products and the Generac Charger Cable were not compatible with each other, that at least one of the Alleged Infringing Products required diesel fuel instead of gasoline, and that another could not crank an engine having a discharged battery. It is also clear that sufficient information undermining any patent infringement claims was publicly and readily available. Mr. Bordas nevertheless concluded that the Alleged Infringing Products "may literally infringe independent claim 2 of [the '961 Patent]" and that they "embodied the language of claim 2 of the '961 Patent, and thus likely infringed." See Brown's Ex. 2 [D.E. 43-2 at 1]; Brown's Br. [D.E. 45 ¶ 39].

In light of the foregoing, the undersigned concludes that Mr. Jenkins and Mr. Bordas' pre-filing inquiry was not objectively reasonable under the circumstances at the time this action was filed. Compare Intamin Ltd. v. Magnetar Techs., Corp., 483 F.3d 1328, 1338 (Fed. Cir. 2007) (finding that a pre-filing inquiry in a patent infringement action was reasonable when the plaintiff "evaluated the patent portfolio, analyzed the patent's validity, determined the scope of the patent's

claims, . . . performed an infringement analysis" and "reviewed publicly available documents on [the accused product], inspected [the accused product], took photos of the [accused product], and reviewed the [accused product] with experts."); <u>Syneron Med. Ltd. v. Viora Ltd.</u>, No. 14-CV-00639, 2014 WL 7140643, at *5 (E.D. Tex. 2014) (finding that the plaintiffs' pre-filing investigation and infringement analysis was reasonable and conducted in good faith when the investigation included a comparison of "their non-frivolously construed claim to [the] [d]efendant's publicly available documents" and "the claim terms appear[ed] reasonably consistent with publicly available documents on an element-by-element basis . . . .").

Based on the foregoing analysis, the undersigned concludes that Generac is entitled to Rule 11(b)(3) sanctions.

## B. <u>Requested remedies admittedly unavailable under the law – Rule 11(b)(2)</u>

Generac further argues that Brown's prayer for relief requesting "profits on its products found to infringe the '961 patent" and "[r]estitutionary relief . . . including disgorgement of wrongfully obtained profits" violated Rule 11(b)(2) because there was no legal basis for the requested relief as the '961 Patent is a utility patent and such relief is only available for design patents pursuant to 35 U.S.C. § 289.[2]  <u>See</u> Generac's Br. [D.E. 46 at 9 n.2].  As indicated above, Mr. Bordas conceded at the Evidentiary Hearing that he had included a request for profits in the

---

[2] 35 U.S.C. ¶ 289, titled "Additional remedy for infringement of design patent[,]" provides, in pertinent part:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

<u>Id.</u>

Complaint as a result of "re-cycling" a prior complaint he had drafted.

"[U]nder Rule 11(b)(2), a party presenting a written pleading to the court certifies to the best of his or her knowledge that the claims or defenses are 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" Powell v. Home Depot, U.S.A., Inc., No. 07-CV-80435, 2009 WL 10664817, at *5 (S.D. Fla. 2009) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)). "[T]he rule establishes an objective standard, intended to eliminate any empty-head pure-heart justification for patently frivolous arguments." S. Grouts & Mortars, Inc. v. Laticrete Int'l, Inc., No. 06-CV-60119, 2007 WL 9700806, at *3 (S.D. Fla. 2007) (internal quotation marks omitted) (quoting Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc., 186 F.3d 157, 166 (2d Cir. 1999)).

Mr. Bordas' "empty-head-pure-heart" justification here is precisely what Rule 11(b)(2) intended to eliminate and is objectively insufficient to defend against the imposition of Rule 11(b)(2) sanctions. See S. Grouts & Mortars, Inc., 2007 WL 9700806, at *3; see also Hochstadt v. New York State Educ. Dep't, 547 F. App'x 9, 11 (2d Cir. 2013) (holding that an attorney's explanation that sanctionable claims were included in a complaint "was the mistake of an overwhelmed and inexperienced solo practitioner" constituted an "empty-head pure-heart" justification that was insufficient to protect her from Rule 11 sanctions).

Accordingly, the undersigned concludes that Generac is also entitled to Rule 11(b)(2) sanctions.

### C. **Improper purpose – Rule 11(b)(1)**

Generac further argues that "Plaintiff and his counsel filed the Complaint with nothing more than a cursory review of a few webpages—and maintained the allegations despite Generac providing them with all the evidence they needed to determine their claims were baseless—shows

the case was likely brought for the improper purpose of extracting a nuisance-value settlement." See Generac's Br. [D.E. 46 at 3].

By presenting to the court a pleading, an attorney certifies that to the "best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . it is not being presented for any improper purpose . . . ." Fed. R. Civ. P. 11(b)(1). "Rule 11[(b)(1)] defines the term 'improper purpose' to include factors 'such as to harass or to cause unnecessary delay or needless increase in the costs of litigation.' The factors mentioned in the rule are not exclusive." In re Kunstler, 914 F.2d 505, 518 (4th Cir. 1990). "An improper purpose is tested by objective standards . . . ." C.W. v. Capistrano Unified Sch. Dist., 784 F.3d 1237, 1249 (9th Cir. 2015) (quotations omitted) (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986), abrogated on other grounds by Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990)). "[T]he party alleging violation of Rule 11(b)(1) must demonstrate that the filer lacked a 'sincere intent to pursue the claim.'" United States v. Henry, No. 07-CV-342, 2017 WL 1065820, at *1 (E.D. Va. 2017) (alteration omitted) (quoting In re Kunstler, 914 F.2d at 518).

Here, an objective assessment of the circumstances surrounding the commencement of this action, supports an inference that the Complaint was filed for the improper purpose of extracting a nuisance-value settlement, given the frivolousness of the claim and the abundance of publicly available information demonstrating same. See In re Kunstler, 914 F.2d at 519 ("If counsel willfully files a baseless complaint, a court may properly infer that it was filed either for purposes of harassment, or some purpose other than to vindicate rights through the judicial process.").

Accordingly, the undersigned concludes that Generac is also entitled to Rule 11(b)(3) sanctions

**D. Sanctions**

Generac seeks an award of its "fees and other expenses incurred in connection with defending against this baseless action" as Rule 11 sanctions against Brown, Mr. Jenkins, and Mr. Bordas. See Generac's Br. [D.E. 46 at 3].

"A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). A sanction imposed pursuant to Rule 11 "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Id.

"[I]n determining the amount of sanctions to impose a district court may take into account compensation of other parties and punishment of the offender, but deterrence remains the touchstone of the Rule 11 inquiry." Fox v. Acadia State Bank, 937 F.2d 1566, 1571 (11th Cir. 1991). Moreover:

> The rule limits a court that imposes sanctions based solely on the opposing party's attorney's fees to a reasonable fee, even if that amount is smaller than the opposing party's actual expenses. Furthermore, Rule 11 does not create an absolute entitlement to even reasonable attorney's fees if the court determines that the rule's central goal of deterrence may be achieved by a lesser sanction. The reverse is also true, for the rule permits a court to impose sanctions greater than the moving party's attorney's fees if the court in its discretion determines that such sanctions are required to deter further unreasonable conduct.

Id. (citations omitted).

Considering Brown's voluntary dismissal of this action one day after the Rule 11 safe harbor period expired, the undersigned finds that the appropriate sanction "to deter repetition of the conduct or comparable conduct by others similarly situated" would be to award Generac its reasonable fees and costs incurred in prosecuting of the Motion for Sanctions. See Gutierrez v.

City of Hialeah, 729 F. Supp. 1329, 1335 (S.D. Fla. 1990) (awarding the defendants their fees and costs incurred in prosecuting their Rule 11 motion for sanctions upon finding that plaintiffs' cause of action was frivolous from the outset).

Therefore, the undersigned recommends that an award of Generac's reasonable fees and costs incurred in prosecuting of the Motion for Sanctions be imposed jointly and severally upon Mr. Bordas, Mr. Jenkins and their respective law firms, Law Offices of Manotti L. Jenkins, LTD and Albert Bordas PA.  See Fed. R. Civ. P. 11(c)(1).  However, the undersigned finds that the imposition of Rule 11 sanctions on Brown is not appropriate.  Initially, Fed. R. Civ. P. 11(c)(5)(A) precludes a court from imposing a monetary sanction against a represented party for violating Rule 11(b)(2).  With regard to Rule 11(b)(1) or 11(b)(3), there is no evidence that Brown had actual knowledge that the Complaint was frivolous or that he was substantively involved in the pre-suit investigation.  See Osorio v. Art Landscaping, Corp., No. 15-CV-20614, 2017 WL 3730989, at *3 (S.D. Fla. 2017) ("Under Rule 11 sanctions may be imposed upon a represented party when the party had actual knowledge that the filing of the papers constituted wrongful conduct, e.g. the papers made false statements or were filed for an improper purpose.") (internal quotation marks and alteration omitted) (quoting Brown v. Artus, 647 F. Supp. 2d 190, 205 (N.D.N.Y. 2009)).

## **RECOMMENDATION**

Based on the foregoing considerations, the undersigned **RESPECTFULLY RECOMMENDS** that the Motion for Sanctions [D.E. 26] be **GRANTED IN PART** as follows:

➢ That Rule 11 sanctions be imposed upon Mr. Bordas, Mr. Jenkins, Law Offices of Manotti L. Jenkins, LTD and Albert Bordas PA, jointly and severally.

➢ That Generac be awarded its reasonable fees and costs incurred in prosecuting the Motion for Sanctions as the appropriate Rule 11 Sanctions.

➢ That no Rule 11 Sanctions be imposed on Brown.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **<u>fourteen</u> days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E. Martinez.  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  See <u>Resolution Tr. Corp. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this <u>27th</u> day of February, 2021.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Jose E. Martinez
      Counsel of Record